Andrew M. Calamari
REGIONAL DIRECTOR
Sanjay Wadhwa
Robert J. Burson *(Not admitted in New York)*
Alexander M. Vasilescu
Kristine M. Zaleskas
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, NY 10281
(212) 336-1100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

  - against -

PAUL KONIGSBERG,

                Defendant.

-----------------------------------------------------------------------x

13 Civ. ___

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Paul Konigsberg ("Konigsberg," or the "Defendant"), alleges:

### SUMMARY

1. The Commission institutes this civil action against Paul Konigsberg, who was a longtime accountant for several wealthy investment advisory clients of Bernard L. Madoff Investment Securities LLC. ("BMIS").

2. From at least the mid-1990s through late 2008, Konigsberg, as an accountant for many of BMIS's clients, aided and abetted BMIS's falsification of books and records that related

to the accounts of several of his clients by collaborating with an employee of BMIS ("Employee X") to: (1) decide upon or direct desired investment and/or tax gains and losses to be manufactured and reflected on his client's BMIS account statements and in BMIS's computer systems; (2) confer about backdated trades and fictitious account activity entered into those computer systems to create the desired results; and (3) return and/or destroy his clients' BMIS account statements so that Employee X could enter alternative fictitious account activity, which she often discussed with Konigsberg, and reflect that activity on new account statements.

3. Konigsberg's assistance resulted in the creation of inaccurate trade confirmations, and the creation of data and records relating to the fabricated trades that were, in turn, falsely reflected in the firm's ledgers and related book and records.

4. Konigsberg was compensated for his work in connection of these BMIS clients. He received fees directly for the accounting services that he provided to these clients, and additionally, BMIS and Bernard Madoff ("Madoff") compensated Konigsberg with a monthly fee of $15,000 or $20,000 as a "retainer" for providing accounting services to a wealthy and longtime Madoff client and his adult children.

5. By this activity, Konigsberg aided and abetted BMIS's violations of Section 17(a) of the Securities Exchange Act of 1934 and Rule 17a-3 thereunder, and Section 204 of the Advisers Act of 1940 and Rule 204-2 thereunder.

### NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)], seeking to restrain and enjoin permanently Defendant from engaging in the acts, practices and courses of business alleged herein.

7. In addition to the injunctive relief recited above, the Commission seeks: (i) a final judgment ordering Defendant to disgorge his ill-gotten gains with prejudgment interest thereon, (ii) a final judgment ordering Defendant to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(d)]; and (iii) such other relief as the Court deems just and appropriate.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14]. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. The Defendant, directly or indirectly, has made use of the means and instrumentalities of interstate commerce, or of the mails and wires, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events comprising Defendant's wrongful conduct giving rise to the Commission's claims occurred in the Southern District of New York, and Defendant engaged in his wrongful conduct while working in a business office in this District.

## DEFENDANT

9. **Paul Konigsberg,** age 77, is the former proprietor of Konigsberg Wolf & Co., P.C. Konigsberg graduated with a degree in accounting from the University of Vermont in 1958. He also earned a law degree from Brooklyn Law School in 1962 and a LLM degree in tax law from New York University in 1965, and has been registered as an attorney in New York since 1962. Konigsberg was licensed as a certified public accountant in New York in 1971. Konigsberg resides in Greenwich, CT.

## RELATED INDIVIDUALS AND ENTITIES

10.     **Konigsberg Wolf & Co., P.C.** ("Konigsberg Wolf") was an accounting firm which did business in New York, New York. Konigsberg Wolf provided accounting and auditing services and tax counseling. Its clients included public companies that filed periodic and annual reports with the Commission. Konigsberg Wolf was acquired by another company in 2011.

11.     **Madoff**, age 75, was the sole owner of BMIS. Until December 12, 2008, Madoff, a former chairman of the board of directors of the NASDAQ stock market, oversaw and controlled the investment adviser services at BMIS as well as the overall finances of BMIS. On February 9, 2009, the District Court, with Madoff's consent, entered a partial judgment in the Commission's case against Madoff. On March 12, 2009, Madoff pled guilty to 11 felony counts relating to his orchestration of the Ponzi scheme. Madoff admitted in his allocution, among other things, that since at least the early 1990s, he had falsely indicated on customer documents that securities transactions had taken place when no such transactions had occurred for investor accounts. On June 29, 2009, Madoff was sentenced to 150 years in prison and ordered to forfeit his assets. Madoff is currently serving his prison term.

12.    **BMIS** registered with the Commission as a broker-dealer in 1960 and as an investment adviser in September 2006. During the time of the relevant conduct, BMIS occupied floors 17-19 of the Lipstick Building in New York City. BMIS purportedly engaged in three different operations: investment adviser services (housed on the 17th floor), market making services and proprietary trading (housed on the 18th and 19th floors). BMIS's many victims were both brokerage customers and IA clients of BMIS, which operated as both a broker-dealer and an investment adviser in relation to the investor accounts. BMIS is currently under the control of a SIPC trustee.

## FACTS

13.    Konigsberg is a long-time acquaintance of Madoff. In the early 1990s, Madoff began to refer clients to Konigsberg for accounting and tax planning services. By 2008, Konigsberg provided tax or accounting services for over 200 BMIS client accounts. Most of these clients paid Konigsberg directly for his services, but for one family ("Investor E"), Madoff, through BMIS, paid Konigsberg's firm a retainer fee of thousands of dollars a month for the services that he provided.

14.    Among Konigsberg's clients were several of BMIS's wealthiest and oldest clients, who invested in total over a billion dollars in BMIS. The accounts of these wealthiest clients were managed at BMIS by Employee X. On several occasions throughout the years, Konigsberg consulted with Employee X to ensure that these clients enjoyed favorable tax treatment for their purported investment activity.

15.    For these clients, Konigsberg directed Employee X to arrive at certain profit or loss numbers. For example, on one occasion, Konigsberg directed that one of his clients experience a trading loss of $1 million, and Employee X complied. On another occasion,

Konigsberg instructed Employee X that his client was to experience no more than $18 million in losses. In giving these instructions, Konigsberg understood that Employee X and BMIS would create unlawful, backdated trades to benefit his clients.

16. On another occasion, in April 2004, Konigsberg informed Employee X that another client would need a particular loss, retroactive to December 2003. Employee X came up with several proposed backdated trades to arrive at this loss, reviewed the backdated trades with Konigsberg, and received approval by Konigsberg to enter the backdated trades in the client's account. Konigsberg understood that the trades were backdated and thus improper.

17. The long-standing understanding that Konigsberg and BMIS had to generate profitable backdated trades in Konigsberg's clients' accounts resulted in trading records being altered long after the supposed trades. Konigsberg knew that this arrangement with BMIS and Employee X resulted in such improper trades in his clients' accounts. Employee X routinely fabricated monthly account statements that reported fictitious trades that were chosen months, and occasionally years, after the trades had purportedly occurred. Accounts for at least six clients of Konigsberg benefited from the backdating of trades by Employee X and BMIS.

18. Further, on several occasions during her employment at BMIS, Employee X asked certain BMIS clients to return old account statements to her, so that she could create additional false trading activity, correct errors that she had made, or remove trades from the clients' accounts. Employee X then sent out the "corrected" account statements to replace those that the clients had returned. For this scheme to be successful, it was essential that evidence of earlier account activity be destroyed or under BMIS's control.

19. Konigsberg helped BMIS and Employee X fulfill this aspect of the false records scheme by sending back, or directing his employees to send back, to BMIS prior BMIS

statements to be replaced by new BMIS statements that had backdated trades for his clients. Konigsberg routinely sent, or caused to be sent, back BMIS statements to BMIS while knowing that the purpose was to cover up the backdating of trades for his clients by Employee X and BMIS.

20.     For example, in the fall of 2008, Konigsberg returned the BMIS statements from January 2008 for another client, Investor F, so that Employee X could create fictional account activity in his accounts.  Konigsberg soon thereafter received revised statements for Investor F's account, and returned the original statements back to Employee X.

## FIRST CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 17(a) of the Exchange Act and Rule 17a-3 (Broker-Dealer Books and Records Violations)

21.     Paragraphs 1 through 20 are realleged and incorporated by reference as if set forth fully herein.

22.     As a registered broker-dealer, BMIS was required to make and keep certain books and records current and accurate pursuant to Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] and Rule 17a-3 thereunder [17 C.F.R. § 240.17a-3].  In particular, Rule 17a-3(a)(2) requires broker-dealers to keep current ledgers and all other records that reflect all assets and liabilities, and income and expense and capital accounts.

23.     As set forth above, BMIS failed to make and keep certain books and records current and accurate.  BMIS, among other things, manufactured and maintained records that falsely reflected BMIS's assets and liabilities, and income and expense and capital accounts.

24.     As a result, BMIS violated Section 17(a) of the Exchange Act and Rule 17a-3 promulgated thereunder [15 U.S.C. § 78q(a) and 17 C.F.R. § 240.17a-3].

25.     By reason of the foregoing, and pursuant to Section 20(e) of the Exchange Act

[15 U.S.C. § 78t(e)], Defendant aided and abetted the violations of Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] and Rule 17a-3 thereunder [17 C.F.R. § 240.17a-3]. Specifically, Defendant knowingly provided substantial assistance to BMIS in committing such violations.

## SECOND CLAIM FOR RELIEF

### Aiding and abetting violations of Section 204 and Rule 204-2 of the Advisers Act
### (Adviser Books and Records Violations)

26. Paragraphs 1 through 20 are realleged and incorporated by reference as if set forth fully herein.

27. BMIS at all relevant times was an investment adviser within the meaning of Section 202(11) of the Advisers Act [15 U.S.C. § 80b-2(11)].

28. BMIS failed to make, maintain on its premises, or keep accurate, certain books and records required by law. For example, BMIS failed to make, maintain on its premises or keep accurate, books and records concerning its assets, liabilities, finances, client accounts, closed client accounts, and correspondence with clients. Among other things, BMIS manufactured and maintained account statements, ledgers, journals and other records reflecting fictitious securities holdings and fictitious securities transactions in investors' accounts, and/or omitting and mischaracterizing material transactions.

29. By reason of the foregoing, BMIS violated Section 204 of the Advisers Act [15 U.S.C. § 80b-4], and Rule 204-2 thereunder [17 C.F.R. § 275.204-2], and Defendant aided and abetted BMIS's violations. Specifically, Defendant knowingly provided substantial assistance to BMIS in committing such violations.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court enter a final judgment against Defendants granting the following relief:

### I.

Finding that Defendant violated the securities laws and rules promulgated thereunder as alleged herein.

### II.

Permanently restraining and enjoining Defendant, his agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting future violations of Section 17(a) of the Exchange Act [15 U.S.C. § 78q(a)] and Rule 17a-3 thereunder [17 C.F.R. § 240.17a-3].

### III.

Permanently restraining and enjoining Defendant, his agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from aiding and abetting future violations of Section 204 of the Advisers Act [15 U.S.C. § 80b-4], and Rule 204-2 thereunder [17 C.F.R. § 275.204-2].

### IV.

Directing Defendant to disgorge his ill-gotten gains, plus prejudgment interest thereon.

### V.

Directing Defendant to pay civil money penalties.

## VI.

Granting such other and further relief as to this Court seems just and proper.

Dated: New York, New York  　　　SECURITIES AND EXCHANGE COMMISSION
　　　　September 26, 2013

By: *Sanjay Wadhwa*
　　　Sanjay Wadhwa
　　　Senior Associate Director
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
3 World Financial Center, Suite 400
New York, NY 10281-1022
(212) 336-1100

Of Counsel:
Andrew M. Calamari
Robert J. Burson *(Not admitted in New York)*
Alexander M. Vasilescu
Kristine M. Zaleskas